UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO **00 - 6126** CR - ROETTGER

18 USC 371
18 USC 1010

MAGISTRATE JUDGE
SNOW

UNITED STATES OF AMERICA,   :

           **Plaintiff,**   :

                 :

v.                      :

CINDY CARAMEROS

           **Defendant.**   :

FILED by _____ D.C.

MAY 12 2000

CLARENCE MADDOX
CLERK U.S. DIST. CT.
S.D. OF FLA. FT. LAUD.

## INFORMATION

The United States Attorney charges that:

### COUNT I

### CONSPIRACY TO DEFRAUD HUD

1.     From at least in or about January 1995 through July 1996, the exact dates being

unknown, in Broward County, in the Southern District of Florida, and elsewhere, the defendant,

### CINDY CARAMEROS,

did knowingly and willfully combine, conspire, confederate, and agree with persons known and

unknown to defraud the Department of Housing and Urban Development ("HUD"), in violation of

Title 18, United States Code, Section 1010.



## BACKGROUND

At all times material to this information:

2.    HUD is an agency of the United States government whose duties include guaranteeing loans to low income home buyers in order to enable them to buy homes, and selling foreclosure properties to individuals who intend to live in the property as an owner-occupant.

3.    For the first twenty-one (21) days after certain HUD foreclosures were offered on the market, the homes were only offered to owner-occupants, that is, persons who agree to live in the property as their primary residence.

4.    Lighthouse Point & Title ("LPHT") was a title company, of which the defendant was an owner.

5.    Defendant's coconspirators were investors in real estate who would buy HUD foreclosures and other properties, make some repairs, and then resell the properties.

### Object of the Conspiracy

6.    It was the object of the conspiracy that foreclosure properties being offered by HUD to owner-occupants would be fraudulently purchased by straw borrowers, in order that defendant and her coconspirators could profit through the subsequent sale of the properties.

### Manner and Means of the Conspiracy

7.    It was part of the conspiracy that coconspirators would and did bid on, obtain, and purchase foreclosure properties from HUD, which properties were being sold to owner-occupants.

8.    It was further part of the conspiracy that coconspirators solicited or caused to be solicited "straw buyers" to pose as owner-occupants in order to purchase the HUD foreclosures.

-2-

9.      It was further part of the conspiracy that coconspirators would and did pay the "straw buyers" money, generally from $200 to $500, in order for the "straw buyers" to pose as the purchaser of the HUD home.

10.     It was further part of the conspiracy that, prior to the closing on the purchase of the HUD foreclosure properties, the "straw buyers" would be coached by coconspirators as to how to act at closing.

11      It was further part of the conspiracy that the defendant would falsely complete the Form HUD-1, which is the settlement statement used for closing, so that it would falsely state that LHPT had received the funds for closing from the buyer, when in fact the funds were being paid from the coconspirators.

12.     It was further part of the conspiracy that, prior to the closing on the purchase of the HUD foreclosure properties, the defendant would and did prepare quit claim deeds transferring the properties purchased by the "straw buyers" from HUD to defendant's coconspirators or their corporations.

13.     It was further part of the conspiracy that at closing the "straw buyers" would execute a document witnessed by the defendant stating that the "straw buyers" were purchasing the property as owner-occupants.

14      It was further part of the conspiracy that immediately after the real estate closing wherein the "straw buyers" had purchased the HUD home and after the closing agent for HUD had left, the defendant would and did cause the "straw buyers" to sign the quit claim deeds transferring the HUD home to coconspirators or one of their corporations

-3-

15.    It was further part of the conspiracy that, even before the closing on the purchase of the HUD home by the "straw buyers," coconspirators and their corporations, would and did execute contracts selling the HUD foreclosure properties to third parties, which contracts were forwarded to the defendant in order that LPHT could prepare the closing documents for the resale of the property.

## OVERT ACTS

16.    In furtherance of the conspiracy and to effect the objects thereof, at least one of the following overt acts, among others, was carried out by at least one co-conspirator in the Southern District of Florida, and elsewhere:

A.    On or about January 17, 1995, a coconspirator caused a bid to be submitted to HUD to purchase the property at 531 Alabama Ave., Fort Lauderdale, Florida as an owner-occupant.

B.    On or about March 9, 1995, defendant prepared a HUD-1 settlement statement for the purchase of 531 Alabama Ave., from HUD, which falsely represented that the purchaser paid $43,539.05 to the closing agent.

C.    On or about March 9, 1995, defendant caused a quit claim deed to be executed after the closing on 531 Alabama Ave., from the straw purchaser to one of her coconspirator's corporations.

D.    On or about March 9, 1995, one of the defendant's coconspirators paid a person $500 for acting as a straw purchaser with respect to 531 Alabama Ave.

-4-

E. On or about December 1, 1995, a coconspirator caused a bid to be submitted to HUD to purchase the property at 1409 NE 3rd Ave., Fort Lauderdale, Florida as an owner-occupant.

F. On or about January 11, 1996, defendant prepared a HUD-1 settlement statement for the purchase of 1409 NE 3rd Ave., from HUD, which falsely represented that the purchaser paid $6,244.63 to the closing agent.

G. On or about January 11, 1996, defendant caused a quit claim deed to be executed after the closing on 1409 NE 3rd Ave., from the straw purchaser to a coconspirator's corporation.

H. On or about January 11, 1996, a coconspirator paid a person $300 for acting as a straw purchaser with respect to 1409 NE 3rd Ave.

I. On or about February 22, 1996, a coconspirator caused a bid to be submitted to HUD to purchase the property at 1120 NW 17th Ave., Fort Lauderdale, Florida as an owner-occupant.

J. On or about April 4, 1996, the defendant prepared a HUD-1 settlement statement for the purchase of 1120 NW 17th Ave., from HUD, which falsely represented that the purchaser paid $8,810.31 to the closing agent.

K. On or about April 4, 1996, defendant caused a quit claim deed to be executed after the closing on 1120 NW 17th Ave., from the straw purchaser to a coconspirator's corporation.

L. On or about April 4, 1996, a coconspirator paid a person $300 for acting as a straw purchaser with respect to 1120 NW 17th Ave.

All in violation of Title 18, United States Code, Section 371.

THOMAS E. SCOTT
UNITED STATES ATTORNEY

JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| UNITED STATES OF AMERICA | CASE NO. _____ |
|---|---|

v.

**CERTIFICATE OF TRIAL ATTORNEY***

CINDY CARAMEROS_____

**Superseding Case Information**:

**Court Division**: (Select One)

New Defendant(s)    Yes ____    No ____
Number of New Defendants ____
Total number of counts ____

___ Miami  ____ Key West
_X_ FTL  ____ WPB ____ FTP

I do hereby certify that:

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act, Title 28 U.S.C. Section 3161.

3. Interpreter:    (Yes or No) ___No_____
   List language and/or dialect    ____English_____

4. This case will take ___0___ days for the parties to try.

5. Please check appropriate category and type of offense listed below:
   (Check only one)                                    (Check only one)

| I | 0 to 5 days | _X_ | Petty | ____ |
|---|---|---|---|---|
| II | 6 to 10 days | ____ | Minor | ____ |
| III | 11 to 20 days | ____ | Misdem. | ____ |
| IV | 21 to 60 days | ____ | Felony | _X_ |
| V | 61 days and over | ____ | | |

6. Has this case been previously filed in this District Court? (Yes or No) __No__
   If yes:
   Judge: _____    Case No. _____
   (Attach copy of dispositive order)

Has a complaint been filed in this matter? (Yes or No) __No_____
If yes:
Magistrate Case No. _____
Related Miscellaneous numbers: _99-4657-SNOW; 97-4601-SNOW; and 97-4609-SNOW_
Defendant(s) in federal custody as of _____
Defendant(s) in state custody as of _____
Rule 20 from the _____    District of _____

Is this a potential death penalty case? (Yes or No) _____NO_____

7. Does this case originate from a matter pending in the U.S. Attorney's Office prior to April 1, 1999? _X_ Yes ___ No  If yes, was it pending in the Central Region? _X_ Yes ___ No

JEFFREY N. KAPLAN
ASSISTANT UNITED STATES ATTORNEY
Court Bar No. A5500030

*Penalty Sheet(s) attached                                                    REV 4/7/99
N \udd\hpantale\kaplan\camaeros\INfPKG2 wpd

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## PENALTY SHEET

Defendant's Name:    CINDY CARAMEROS        No.: _____

Count #1:
Conspiracy to defraud HUD, all in violation of 18:371 _____

*Max Penalty:    5 years' maximum imprisonment; $250,000 fine _____

Count # :
_____

_____

*Max Penalty: _____

Count #:
_____

_____

*Max Penalty: _____

Count # :
_____

_____

*Max Penalty: _____

Count # :
_____

_____

*Max Penalty: _____

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms or forfeitures that may be applicable.**

REV. 12 12 9-